Good morning Your Honor. I am Joseph Black. I represent Nyle Hooper in this action. With me is Ms. Hancock representing the United States. That will take ten minutes and Ms. Hancock will take three and I'd like to reserve two for rebuttal. The district court made three reversible errors below. The first required a showing of intent and state of mind to prove knowledge under the FCA. It erroneously excluded evidence and it applied the wrong statute of limitations to Hooper's discharge claim. With regard to the underbid count, the first count in Hooper's complaint, the court stated that in dismissing the, in granting summary judgment, the court acknowledged that there was some evidence of underbidding but dismissed the count because she said that Mr. Hooper failed to show intent or state of mind. This is wrong as a matter of law. There is no requirement for showing intent in the, under the FCA. The statute specifically states no proof of specific intent to defraud is required. Lockheed agrees with this assessment but has argued that the, that the error, the court's error was harmless. The error is not harmless because it underpins the court's whole decision on the underbidding count. For this reason alone, the court, this. But that doesn't matter anyway because we're on summary judgment. So the question is, on the right standard, why wasn't, wouldn't summary judgment be appropriate? Because there was a showing of knowledge under the, under the False Claims Act. The same evidence that the court found that supports an underbidding also demonstrates that Lockheed acted knowingly when submitting its bids. This is largely testimonial evidence from Michael Allen, a key Lockheed employee who was involved in the, in submitting rebids to the government during the 1997 2000 time period when the court, when the government asked Lockheed to rebid all the components of the contract. Lockheed's Allen stated that he was asked to lower the cost proposal on the FOB one product. He testified I was simply asked to change the cost. They did not care how I did it. They simply asked me to change the cost. He stated that the rebids were underbid by as much as 50 percent. This applied to the FOB one product and the FOA product, the key components of the RSA2 product, RSA2A product. I couldn't really understand the testimony. Was he saying that it was underbid by 50 percent as compared to how it turned out? No, it wasn't. Excuse me. Or underbid by 50 percent as compared to what he thought the bid should have been. Underbid by 50 percent as to what he thought that the product should have been. And he said that the decision to lower the bid was not based on engineering judgment. It was just simply a matter of deciding to lower the bid to a number that Lockheed thought that the government would accept. Importantly, in all the in the process of underbidding, Lockheed never told the government that it could not build the product for the cost that it was bidding. Lockheed disputes this evidence, but disputes the characterization of this evidence. But essentially, since all inferences have to be made in Hooper's favor, it just creates a jury question that a jury must resolve. The evidence was from Allen. Is that right? The evidence that the court admitted was primarily from Allen, yes. But didn't he say he didn't really know what happened? I mean, he knew that he'd given them a cost spin. He knew they didn't like it. But after that, he didn't know very much. Well, he did know. He because he knew what the budget was and he realized that the budget was 50 percent of what it would take to build the product. If I may go on regarding the evidence issue, the court erroneously struck most of the evidence related to the freeware counts. That's counts one and two. I'm sorry, counts two and three of the complaint. And these were related to intellectual property rights and safety concerns. There are two issues, authentication and an expert report. Are you going to talk about the statute of limitations issue? I will address that if you'd like. Well, that's a big issue. Well, we believe that the statute of limitations issue is fairly clear on the law and that it's an independent basis for reversal. But it only goes to something else. It doesn't go to any of this. That's correct. The statute of limitations only goes to Hooper's discharge claim. And that was dismissed and a motion to dismiss early on. The question was what state law should apply. Under Graham County, the court is required to apply the closest analogous state law. The question is whether you apply Maryland law or California law. And our position is, as we lay out in our briefs quite clearly, that the court was obligated under Van Dusen to apply Maryland law. Maryland law says that statute of limitation is procedural and under its procedural rules it will apply a Maryland law regardless of what state substance of law applies. Therefore, the court had to transport itself back to Maryland and act as though it was sitting in Maryland and apply Maryland law. And if it had done so, it would have found that it would have applied the Maryland three-year statute of limitations. And that's what the court did in Ackley, which was a relatively similar case. There's the possibility that Ackley — But Ackley came out the other way. You're making the whole thing much more complicated than it appears that it needs to be. I mean, basically, isn't — didn't Ackley come out the other way? No. Ackley applied Maryland law. Applied Maryland law because — but that was the law of the forum, not the law of the — not the transferor court. The only issue that was raised in Maryland — I mean, in Ackley, was whether or not Maryland law applied or New York law applied to this case. Apparently — You're getting into a choice of law question for reasons I don't understand. I'm sorry? You're getting into a choice of law question for reasons I don't understand. Because, basically, the question is, do we — do you incorporate the state law of the transferor court or the limitations period or the state limitations period or the transferee court? And there's no necessary choice of law question embedded there. It's which one is it. And if it's the transferor court, then Maryland's limitations period is three years. And that's it. Well, we'll accept that, then. Then it's Maryland. If the transferor court is Maryland and they have three-year statute of limitations. And if you get into choice of law theory, you come up with the same result. If I can move on to the evidence issues, the court erroneously struck — again, erroneously struck most of the evidence related to the freeware count. The court insisted that most of the documents be authenticated by personal knowledge. But as this Court has stated previously, documents can be authenticated on alternative grounds. Documents could be authenticated by review of the contents if they appear to be sufficiently genuine. What's our standard of review of evidentiary rulings? Well — Isn't it abusive discretion? Yes, but it is an abusive discretion if you apply the wrong standard. That's what the Las Vegas Sands case held. If you apply the wrong law, and this is what the Court did, it is necessary to reverse the Court on abusive discretion standard. But the problem was the district court said it couldn't even figure out what these documents were. It wasn't — Well — The authentication was a real problem in this case. In other words, it wasn't simply a technical problem. It was not possible to know what these documents actually were. Well, we identified some of the documents in our brief when we talk about some of the documents. And if you were to look at the documents, you'll see that it's fairly obvious what the documents are. Most of the documents were e-mail strings from — internally e-mail strings from Lockheed. The Court, as a matter of fact, did accept many of the documents that Lockheed produced to Hooper, but failed to produce documents that — Lockheed documents that Hooper produced to Lockheed, that is, that Hooper had obtained during his employment at Lockheed. Counsel, you're using up your amicus's time. I'm sorry? You're eating into your amicus's time. Oh, I'm sorry. I — She's looking anxious. Good morning, Your Honors. May it please the Court, Katherine Hancock on behalf of the United States as amicus. On appeal here, Lockheed makes the categorical argument that even if the plaintiff or later did provide sufficient evidence of either a false estimate or a fraudulent underbid, that neither of those showings would provide a basis for liability under the False Claims Act unless there is also a fraudulent claim for payment. The United States is participating in this amicus here just for the limited purpose to urge this Court to reject that argument if it reaches it. In the United States' view, a knowingly false estimate may constitute a false statement within the meaning of the FCA. Both the First Circuit and the Fourth Circuits have so held, and that position is also consistent with numerous courts' construction of both false statements within the context of the False Statement Statute and the Criminal False Claims Act. Nor is there any reason to insulate from liability a contractor or individual who provides a false estimate, a knowingly false statement in a False Claims Act situation. If the claim is not, if the estimate is not made in good faith, there's no reason that individual should be protected from potential liability. Similarly, a fraudulent underbid... First of all, you seem to be drawing a distinction between a false estimate and a fraudulent... Underbid. Underbid. What's the difference? Well, I think a false estimate may in some circumstances be part of a fraudulent underbid, but it could be separate. There could be an instance where a contractor just makes a false statement about its anticipated costs, say, you know, the company knows that widgets cost it $500, but it puts in, it tells the government that, oh, it can provide widgets at $300, and it knows that that is a false estimate. And then a fraudulent underbid may, as part of the bid, it may include that false estimate about the particular cost of widgets, but it could also be the case where there's a fraudulent underbid, the total is not based necessarily on any specific false statement, but it could be an act, a fraudulent conduct in order to induce the government to enter into the contract, where the contractor then has the intent that he will not comply with that bid on the terms he has offered to the government or intends to seek further payment down the road. Well, have you ever had a bid that's accepted where the bidder performed within that bid and didn't come and ask for extras? That doesn't happen very often. I think there is that possibility, Your Honor, that you could have a fraudulent, what is intended to be a fraudulent underbid from the start, but then for some reason the contractor doesn't actually seek more payment at the end. In the United States' view, if there was still fraud to induce the contract, so fraud in the bidding process, even if there are no damages to the United States... I'm not talking about fraud in that sense. I'm just thinking about the difficulty in coming up with a bid, a true bid. There's so many imponderables here, so many unforeseeable events. Sure. Does the government sit down and say, well, we want this device, no matter how complex it is, and put all its people to work to figure out what it's going to cost? Well, I think in response to Your Honor's question, that's why this is so tied. This issue of whether a statement is false or a false estimate or a fraudulent underbid is very tied up with the other element of the False Claims Act, that this has to be knowing or with reckless disregard. Obviously, there's something in estimates where a company makes projections and nothing is certain. It's not objectively verifiable. So you look to whether that estimate was made in good faith on the part of the contractor. If either there were no facts to support the estimate or the contractor knew of facts which precluded that estimate, those would be indications that it was a false estimate not made in good faith and would be a basis, potentially a basis, for liability under the False Claims Act. Does that answer Your Honor's question? Sort of. In other words, when the government puts something out to bid, the government itself doesn't really know what it's going to cost. Sure. There's obviously in estimates nobody has a precise idea of exactly what the cost is going to be, and that's why there are provisions for, you know, depending whether it's a fixed-price contract or a cost-plus contract, to figure out what those costs are. And as long as those cost adjustments are made in good faith and with legitimate reason, that's all fine and there would be no problem under the False Claims Act. Is there some materiality aspect to this? In other words, I presume that all of this, does it matter that the estimate has to have had a role in who was chosen to do the contract? There definitely is a materiality requirement under the False Claims Act. So if the false estimate or fraudulent underbid was made in such a way that it really had no relation to the ultimate request for payment, then again. What if it had no relation to, I mean, these were cost-plus contracts and the government said that the cost was not controlling, and in fact it did not choose the lowest bid. So, and it may well not be the case here, but if there was an instance in which the government said, well, you know, we want your cost estimate, but that's not really what we care about. I think the perfect example of that would be in a fixed-price contract where the government came back and maybe asked for cost estimates later at some point, but the contract was a fixed-price contract. So the estimates then might not, might well not be material to any actual claim for payment. And of course there could always be a fraudulent bid that isn't accepted, which means it's interesting, but there's no damage to anybody. That's correct, Your Honor. The Court has no further questions. We will rest on our briefs. Thank you. Good morning, Your Honors. May it please the Court. Mona Elihu-Lombardo on behalf of Lockheed Martin. I'd like to spend about half of our time addressing why the dismissal of Mr. Hooper's employment retaliation claim should be upheld. Then my co-counsel, Mr. Troy, will address why summary judgment on the False Claims Act's counts should be upheld. California's two-year limitations period bars Mr. Hooper's employment retaliation claim. There's no basis to apply Maryland's three-year statute of limitations. Well, when this case was originally brought in Maryland, was that a proper or permissible venue for it to be brought? Yes, Your Honor. It was a proper venue. So if the case had continued on in Maryland, the three-year statute of limitations would have applied, and this claim would be timely, correct? We don't believe that the Maryland court would have applied the three-year statute of limitations. The Maryland court follows the Lex Loci Delecti rule, and substantive law is determined by the place of the wrong. Procedural law is determined by the place of the forum. If this case was in California, Maryland would apply the law of the forum, which is California, and because we are now in California, we deal with the law of the forum. Is that how the rule applies under the federal incorporation doctrine? In other words, you're making an assumption that I don't know whether it's true or not, which is that the rule that you adopt the limitations period of the forum as federal law for certain purposes is subject to choice of law rules. Is that true? That is true because the U.S. Supreme Court has said in Del Castello, and this is not in the reply brief. This is not in the papers because it was brought up first in the reply brief papers by Mr. Hooper, but Del Castello, the United States Supreme Court case that states that the issue of a statute of limitations on a federal cause of action is itself a question of federal law. I understand that. That's what I said. What I want to know, can we listen to the question? Okay. The question is, it's a question of federal law, but the resolution of that question of federal law in Del Castello and elsewhere, or not in Del Castello but in other cases, is that you incorporate the forum statute of limitations, right? Yes, Your Honor. All right. What I'm asking you is, when you do that, do you simply adopt the forum statute of limitations, which is what I had thought, or do you then apply the forum's choice of law standard to that? It is the latter, Your Honor. All right. Where is that from? Newton decides that, and that's a decision decided by, Your Honor, Judge Pragerson. So Newton v. Thomason made it very clear that when reviewing federal claims that have been transferred here, the transferee court sitting in this circuit is bound only by our own circuit's precedent. That's a different question. Will you listen to my question, please? This is not a question of circuit precedent. This is not, this is a, there is a rule that is a federal rule that applies here, that you incorporate the forum's statute of limitations in certain instances of which this is one, right? Correct, Your Honor. All right. This is not a question of circuit law. It's a question of a federal standard that says you do that. Do you incorporate the forum's own statute of limitations, or do you incorporate the forum's choice of law rule as it would apply the statute of limitations? You incorporate the forum's choice of law. I know you're saying that. What is the authority for that? I believe that it hasn't been specifically decided. There's a split in some of the circuits, but in the Ninth Circuit, the most controlling decision would be Newton, because it explains that we're going to treat cases differently and causes of action differently. Is Newton about the question of the incorporation of a statute of limitations under such a rule?  Not specifically, Your Honor. Right. Okay. So it's not the authority of the question I'm asking you. Is there any authority in the question I'm asking you? I don't believe there is. Well, not in this circuit, but doesn't the Seventh Circuit rule and the Tenth Circuit rule and the Fourth Circuit rule run contrary to what you're arguing? In statute of limitations context, those cases do cite to the concept that the transferor circuit's statute of limitations should be applied. Well, for exactly the reason that my initial question said, that is when the case was brought in Maryland, which was a permissible and proper venue, had the case gone forward there, it would appear, because what is incorporated, I guess this is where you're differing with this, but it seems to me that the Maryland court would use the Maryland statute of limitations, because that's the federal rule, which is you use the statute of limitations of the forum, which was Maryland. And the only reason it got to California was for the convenience of parties, and that's fine. But why isn't the reasoning of the Eckstein case and the reasoning of the Olcott case, why isn't that persuasive? Well, Olcott specifically stated that it was following Eckstein in the limited context of the Securities and Exchange Act statute of limitations, which was mandated by Congress. Congress had taken a look at the situation where the different federal circuits had applied different statute of limitations and specifically instructed that a certain new federal statute of limitations should apply. The Tenth Circuit specifically states in Olcott. But Eckstein, which it's adopting, is on point with your situation. It's a choice between a transferor court and a transferee court. That's correct. But Eckstein is also limited to that particular situation because Congress told it to do so in that situation. And they state that in their case. They state the general rule that ordinarily a transferee court should use its own law to interpret federal claims. But that's not what you're advocating anyway. You're not advocating the use of the federal law of the circuit. This is a different question. The question is when you incorporate state law, not apply federal law, which can vary from circuit to circuit in a temporary basis, but theoretically and in the long run should be uniform. This is never going to be uniform. It's not meant to be uniform. And the question is why should, by transferring the case for the convenience of the party, the limitations period change, when in fact it was timely when it was filed? You know, we respect the plaintiff's choice of forum. And we'd like to see cases decided on the merits, right? There's an overriding policy on that. So I don't think you're reading my case, which is carefully. Okay. Ron, I'll just leave with one last point before turning it over to my colleague to discuss the other FCA issues. Here, Mr. Hooper was aware that California would bar its claim. And California has an interest in barring stale claims that come before it in its forum. And the defendants were aware that if they made a forum nonconvenience motion and got it to California, that they would have an argument for barring the claims too. So if you're interested in knowing whether there was forum shopping going on here, it was obviously a dual problem. Yes, Your Honor. That is the correct way of looking at it. But I'd finally say that because all of the issues took place in California, Mr. Hooper was employed by Lockheed Martin in California. He lived in California. That relates to the question you never answered. And if you should answer it and want to write us a letter answering it, I'd be interested, i.e., when you are incorporating the law of the state of the forum, Maryland law, do you look to what Maryland would have done with regard to a choice of law question and doing that or not? That's the question you never answered. If we get to that, Your Honor, I would submit that under the Ackley case, Maryland would apply the law of the forum. But I'm not asking you that. I'm asking you whether the incorporation rule takes account of that or not. And you still haven't answered that question. Thank you. Thank you, Your Honor. The three are what they do. May it please the Court, Mark Troy for Lockheed. I'm going to address the False Claims Act issues. Mr. Hooper simply offered no evidence to satisfy the element of falsity under the False Claims Act. Most of what he relied upon was properly excluded for lack of authentication, hearsay, and untimeliness. And the plaintiff has not shown the Court abused its discretion. As Your Honor has noted, the Court found that his submissions reflected a fundamental misunderstanding of the rules of evidence. And that's clear if you look at the record and the documents that he provided in the record. They are largely meaningless or gibberish. And there's no witness who is explaining what those documents are, where they came from, and what they mean. We don't know where the documents came from? Well, the only thing that was provided was counsel's declaration stating that a third party produced these documents. So in that sense, I misspoke. They came from a third party. Right. But they weren't established as business records under the hearsay exception, and no foundation was provided as to what the documents, why they were prepared, or what they meant. Mr. Hooper never deposed or obtained a declaration from a single Air Force witness. Instead, this whole case he's arguing, he's right, and it's the Air Force, it's the government, that's wrong. On the standard of knowledge, the district court's essential finding was that none of Lockheed's statements or claims was false. Once that finding is made on the threshold issue of falsity, the case is over. You don't reach the next element of the False Claims Act, which is whether the false statement was made knowingly. That's clear in the general dynamics case cited at page 40 of our brief. So the district court's discussion of the see, enter element, about what constitutes knowledge of falsity, is irrelevant because you never get there. Well, what about the Allen testimony? Well, Mr. Allen, with respect to the fraudulently low estimates, Mr. Allen testified, and we have the citations at page 38 of our brief, he testified, Mr. Hooper said that on two occasions he was asked to lower his cost estimate. Okay? On the first instance, he testified that he didn't lower it, so he provided the estimate that he believed was right. On the second instance... But then it wasn't used. Right. Right. On the second instance, he testified... So I understood the testimony to be, I didn't change my estimate, but they didn't use my estimate because they didn't want to give an accurate estimate. They wanted to give an inaccurate estimate. Oh, no, he testified that he, for both instances, he did not know what ultimately was provided to the Air Force. He never had any direct communication with the Air Force. The estimate that was ultimately provided was something 50% less than what he gave. He did not say that. He did say something like that. I wasn't quite clear what he meant, but he did say something like that. I read it. Well, he didn't say, he had no testimony about what was actually provided to the Air Force. He just testified about what he provided to his manager. Why did they take him off that bid? Why did they take... The estimate, yeah. There's no evidence that they did. They may very well have used his own, his estimate. Do you know whether the cost was, in fact, lower than it had to be? Well, do you know it didn't meet the funding that they had available when they funded it, and they did fund it? And do you know, do you have personal knowledge whether or not the actual cost number provided to the Air Force was different than the one you had proposed? I'm almost positive that it was almost half. Based upon what? The Air Force management, after the fact, when we were actually in development discussions, they said, well, we only have $50 million, and you know we can't do anything else because this is all the money we have. So he did testify about that. It doesn't help for you to stand up and say he didn't. Now, you can say that's not enough, it's not accurate, it's something, but he said it. It seems quite speculative, in my view at least. But what you could also read into that... What's the point of standing up here and saying that he didn't say it? Well, he did not have evidence, he did not have confident evidence that... He was almost positive. That's what he said, he's almost positive. There's other parts of the record that we cite where it's fairly clear that he had no idea what was ultimately provided to the government. But what he's talking about in that situation... Why wouldn't that be an issue for a jury? If somebody's almost positive about a fact and it's based on things that your client said, why isn't that sufficient to go to a jury? Well, the larger context of what he's talking about is that the Air Force, his understanding is that the Air Force directed Lockheed to lower its estimate on that particular modification. And that happened regularly throughout the performance of the contract. This is more of a theoretical question, but if the government says to a contractor, you know, this estimate or this bid is more than we can afford, is there any way that we can get you to reduce it? Now, the contractor can go back and look at honest ways to reduce the bid, but a contractor could also go back and look at dishonest ways to reduce the bid. So why does the fact that they were asked to reduce it have anything to do with whether what was ultimately done was false or fraudulent? Well, if the government is directing the contractor... I understand, but that's only the predicate. So the contractor can say, I'm sorry, we can't do that. Or the contractor can say, well, I could shave a little here. We could, you know, maybe, you know, hire a different sub. We could, you know, reduce the quality of the tile on the floor. There are plenty of honest ways to do that, or you could say no, but then there are dishonest ways to do it. So I guess I just don't see why asking makes a bit of difference. Well, there's no evidence that whatever Lockheed provided in response to the government's direction was false. Well, Alan's testimony, as I understand it, was I looked at the actual request, and I gave an appropriate estimate, and any other estimate was not based on engineering considerations and could not have been an accurate estimate. It could completely disapprove that, but that is the thrust of his estimate. Well, at best, that's his opinion, and that goes to the question that the government addressed about whether an opinion can be the basis for a false claim. And we've made the argument in our papers that statements of judgment and opinion don't have a truth or falsity about them, and so can't be a predicate for False Claims Act liability. The government, Mr. Hooper, relies on the- Presumably, I mean, if, for example, the government said we want to buy 75 widgets, and Mr. Alan was in charge of buying widgets, and he, for the purpose of giving that, or figuring out how much the widgets cost, and he gave testimony that said, I went and looked at the market for everything that went to widgets, and I surveyed every possible sale, and this is the absolute cheapest price you could get for widgets, for the components of widgets, and so there's no way it could cost less than X, and they provided Y. Would that be an opinion? And that's what I essentially understood him to be saying. Yeah, it really is not, that's not an opinion. When you, when the government, when there's litigation concerning the accuracy of statements in a proposal, statements of fact about factual data, historical cost data, current data about we went to this subcontractor, and their cost is X. That is factual data that the regulations and the Truth in Negotiations Act require to be true. But Mr. Alan gave testimony essentially that I went and figured out, I did that. I went to all the components, I figured out what they were going to cost, and anybody who did something 50% less had to be making it up. No, his testimony is not that. His testimony is simply an expression of his opinion. He is not basing, he is not saying that he at no time accused Lockheed of presenting false factual information. Lockheed provided factual information, and then he opined on it for what it meant. As to the key document in here that the plaintiff is relying on is the Air Force's conclusion or review of Lockheed's original bid, saying that it had unrealistically optimistic assumptions. I'd like to direct the Court to the two paragraphs in front of that statement at Excerpt of Record 717, where the Air Force, reviewing the proposal, says that Lockheed employed realistic estimating methods, but was optimistic about some of the inputs, resulting in an overstated potential for cost savings. However, the defects in risk analysis weren't considered to be a discriminator, since it accounted for only a portion of one of the cost factors. Overall, Lockheed was found realistic for this factor. That is a far cry from evidence of a statement that someone thought that fraud was occurring here. What's going on here at the beginning of the contract and in these modifications are merely differences of opinions about a guess on a matter of cost reimbursement contract and cost reimbursement modifications that are cost reimbursement because they are inherently difficult to predict. The second piece of evidence that Mr. Hooper relies on is simply that there was cost growth over a 15-year period of this contract, and the Court correctly noted that there was no connection between that cost growth and anything that Lockheed did, certainly not anything tied to fraudulent underbidding. Mr. Hooper at no point in any of his papers compares apples to apples, so there's no evidence that says As part of this complex system, we said that widget A is going to cost $100,000. Then we went out and years later we built widget A. We developed it, we manufactured it, and there were no changes, nothing to interfere in the plan. We built what was originally called for, there were no changes, and widget A ended up costing $300,000. There is not a single piece of evidence that compares, that does that sort of comparison, so it is impossible to associate any cost growth with any sort of wrong estimate or underbid. The point made by the government is an interesting academic exercise, but the Court really doesn't need to reach that issue on whether estimates can be a basis for false claims. I think you've overrun your time. Okay, I understand. Thank you. Your Honor, if I have more time, I'd just like to respond briefly. Lockheed's argument on the bidding count. We'll give you a little time overrun. Thank you very much, Your Honor. Lockheed's argument on the underbidding count, on the evidence issue, is essentially a question of re-weighing the evidence and on summary judgment. That's just not appropriate. Is the only evidence, admitted evidence, the Allen information? The only admitted evidence, there is other evidence in the record that was admitted, but most of it is the Allen testimony that was admitted, yes. And what else is there? Doc, there is evidence which... The Air Force memo was... The Air Force memo and the characterization of that, unrealistic productivity rates. Well, that affected the contracts throughout. And that was the original basis of our underbidding count. And then we learned about the underbidding for the rebids. And most of that was unrealistic productivity rates. And then there was testimony that they just simply lowered the bid to obtain the contract, or obtain the rebids. The interesting thing is, is that Allen stated that the one piece that was bid correctly wasn't accepted because it was too high. So that demonstrated the knowledge on the part of Lockheed that if they bid correctly, they would likely not be able to continue their RSA-2A contract. This contract had lasted from 1996 until, I believe, today. I believe it's still ongoing. And they're still having difficulty with it. The general who was reviewing the product when it was delivered to them in 2009 for final testing said that it was too immature to continue the Air Force's own testing and send it back to Lockheed. And Lockheed got another 40 million dollars to correct its flaws. And this was based based mostly on the processes that it was following, the incorrect processes that it was following, mostly related. Well, we believe we like the freeware and to testing. And it is if it failed, it failed to follow the correct processes because it didn't have enough money to follow the correct processes. That's the essence of what we are alleging in this case. And it shows up. The proof is in the pudding. The end result was is that they came up with a product that doesn't really work very well. Anything else? So how does that work into a false claim? Well, you know, the end result. The reason why you have requirements to follow certain procedures and processes is so that you get a product that works in the end. The false claims were the claims that we followed the process. And then we made claims for payment on it. When they and they didn't follow the process, that's the false claim. Had they followed the process, they might have produced a product that worked. So they're saying if they did honestly, the end product would work. If they had been it honestly, they would have had enough money to do it appropriately. They didn't bid honestly, didn't have enough money to bid it appropriately. And ultimately, they had to go back and try to fix the problems with the original work. They continued to do this for a process of 5, 7, 10 years. Well, this goes on all the time, doesn't it? But yeah, it does go on all the time. But that's not a reason to accept it. No, I know that. But all right. Thank you. All right. Thank you. All right. This matter is submitted. Your Honor? Yeah. You have invited me to write a letter to the court that may answer your question. May I have about one minute to bring up one other case that may be a response to your question? Judge Berzon? Mm-hmm. Okay. In Lampf, Cleva, Lipkin, Prupis, and Pettigraw v. Gilbertson, it's a United States Supreme Court case cited in our briefs, that court stated that the court borrows or absorbs the local time limitation, most analogous to the case at hand when you're dealing with a federal claim. They state that as the ordinary rule to be followed. Perhaps that may be the question that you were asking that I was not understanding. Okay. Listen, I want you to leave here free of any anxiety. It's not my question, but it's fine. Thank you. Yeah. But why don't you just write that citation down? Well, I think you can write the citation down, but since you don't understand the question, you're not going to be able to answer it. So that's fine. Well, that's all right. Just write it down. Okay. Anything else here? I think that's all. Oh, okay. It's matters submitted. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. So you're Jessica Stebbins. I am her co-counsel, Maya Ingram, from the UCLA School of Law, Ninth Circuit Appellate Clinic. And we'll be splitting our time. So that's your name? Maya Ingram. That's Jessica Stebbins from O'Melveny & Myers. There's been an interlineation on the calendar on the most recent. All right. Fine.
judges: Pregerson, Graber, Berzon